IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SOUTHERN PAN SERVICES COMPANY, THE SOUTHERN PAN – ARTIS GROUP SERVICES JOINT VENTURE , THE ARTIS GROUP SERVICES, LLC, TEXAS FORMWORK, LLC, HYBRID CONCRETE STRUCTURES, LLC, SOUTHERN PAN SERVICES CO. EMPLOYEE STOCK OWNERSHIP TRUST and BRACK MAGGARD, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | CIVIL ACTION NO: |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| CARRIE N. HARRIS, | ) ) | |
| Defendant. | ) ) | |

## I.   COMPLAINT

COMES NOW, Plaintiffs Southern Pan Services Company ("SPS"), The Southern Pan – Artis Group Services Joint Venture, The Artis Group Services, LLC, Texas Formwork, LLC, Hybrid Concrete Structures, LLC, Southern Pan Services Co. Employee Stock Ownership Trust (collectively, "Plaintiff

Companies") and Brack Maggard (collectively "Plaintiffs") and allege the following claims against Defendant Carrie N. Harris:

## II.    INTRODUCTION/NATURE OF COMPLAINT

1.

This is an action for damages arising from former Chief Financial Officer ("CFO") and Treasurer Carrie N. Harris's intentional mismanagement of the Plaintiff Companies' finances, including engaging in: racketeering activity in violation of Sections 1962(b) and 1962(c) of the Racketeering Influenced and Corrupt Organizations Act of 1970 (18 U.S.C. § 1961, *et seq.*) ("Federal Civil RICO"), racketeering activity in violation of O.C.G.A. § 16-14-1 *et seq*. of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia Civil RICO"), Breach of Fiduciary Duty and Duty of Loyalty to Plaintiffs, and Common Law Fraud.

## III.    SUBJECT MATTER JURISDICTION

2.

This Court has jurisdiction over the subject matter of Count I of this Complaint (Federal Civil RICO) pursuant to 28 U.S.C. § 1331 because this action involves a federal question. The Court has subject matter jurisdiction over Count II (Georgia Civil RICO), Count III (Georgia Breach of Fiduciary Duty/Duty of

Loyalty), and Count IV (Common Law Fraud) of the Complaint pursuant to its supplemental jurisdiction granted by 28 U.S.C. § 1367 as they arise out of the same nucleus of operative fact that form the basis of their Federal Civil RICO claims.

## IV.   PERSONAL JURISDICTION AND VENUE

3.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. §§ 1391(a)(2) and (b)(2), because a substantial part of the events giving rise to Plaintiffs' causes of action occurred in Lithonia, Georgia, which lies within this United States judicial district.

4.

This Court has personal jurisdiction over Defendant because she resides within the State of Georgia and has had such significant contact with the forum district that the exercise of personal jurisdiction over her complies with due process.

## V.   PARTIES

5.

Plaintiff SPS specializes in concrete formwork and turn-key frame construction for commercial, industrial and institutional customers in the

southeastern United States. SPS operates from offices located at 2385 Lithonia Industrial Boulevard, Lithonia, Georgia, 30058.

6.

SPS is an employee-owned company through an Employee Stock Ownership Trust ("ESOP").

7.

Plaintiffs Southern Pan – Artis Group Services Joint Venture, The Artis Group Services Joint Venture, Texas Formwork, LLC, and Hybrid Concrete Structures, LLC are affiliated with and/or controlled by SPS.

8.

Plaintiff Southern Pan Services Co. Employee Stock Ownership Trust is the ESOP entity for SPS.

9.

Plaintiff Brack Maggard is a member of the Board of Directors of SPS and is the SPS ESOP trustee.

10.

Defendant is an individual residing at 214 Buster Brown Road, Jackson, Georgia.  She may be personally served with service of process at her residence pursuant to Rules 4 and 5 of the Federal Rules of Civil Procedure.

## VI.   FACTS COMMON TO ALL CAUSES OF ACTION

11.

SPS hired Defendant in January of 1998 to work in SPS's accounting department.

12.

SPS paid for and/or funded in part Defendant's continuing education.  While employed by SPS, Defendant obtained a Master's Degree in Business Administration from Kennesaw State University, and earned the designations of Certified Financial Manager and Certified Management Accountant.

13.

In 2007, Defendant was promoted to the positions of CFO and Treasurer of SPS, thereby becoming an officer.  Defendant held these positions from 2007 until the termination of her employment in 2013.

14.

Defendant reported to President and Board Member Ken Dickey and to Board Member Brack Maggard.

15.

The SPS Board trusted Defendant due to her long tenure with the Plaintiff Companies and her educational training and qualifications, which were paid for and/or funded in part by SPS.

16.

SPS President Ken Dickey relied upon Defendant's financial reports and believed them to be true and accurate.  Defendant understood that Plaintiffs would be making business-related and tax-related decisions based on the financial information that she provided to them.

17.

As CFO and Treasurer, Defendant was responsible for ensuring that the Plaintiff Companies complied with all federal and state employment tax laws.

18.

Defendant's tax-compliance duties as CFO and Treasurer included:

(a)     preparing and timely filing Forms 941 (Employer's Quarterly Federal Tax Return) for all the Plaintiff Companies;

(b)     preparing and timely filing Forms 940 (Employer's Annual Federal Unemployment Tax Return) for all the Plaintiff Companies;

(c)     preparing and timely filing Forms W-2 (Wage and Tax Statements) for all the Plaintiff Companies;

(d)     making timely and full payments with respect to the Forms 941 and Forms 940 for all the Plaintiff Companies; and

(e)     completing employment tax preparation, filing and payment duties with state tax and labor authorities for all the Plaintiff Companies.

19.

Defendant's job responsibilities also included preparing and providing reports to the officers and directors regarding the financial position for all the Plaintiff Companies, as well as hiring and firing accounting personnel for SPS.

20.

Defendant travelled to SPS's United States Post Office Box almost every day to retrieve the Plaintiff Companies' mail, and rarely delegated this task to other, lower-level employees.

21.

Defendant was solely responsible for overseeing the Plaintiff Companies' preparation of their financial documents, tax documents and financial statements, including presenting and reporting accurate and timely historical financial information, managing cost reduction and internal controls, treasury duties related

to the capital structure of the Plaintiff Companies, economic strategy and forecasting for the Plaintiff Companies, reporting to employee participants their shares and valuations, management of the Section 401(k) retirement-plan, coordinating fiscal audits and performance of internal audits.

22.

As CFO and Treasurer, Defendant and those employees under her direct control were the only individuals who could make electronic payments and transfers for the Plaintiff Companies, including tax-related payments to the federal and state tax authorities.

23.

Defendant was proficient with SPS's accounting software, Timberline.

24.

Until 2012 when SPS Vice President of Operations Jeremy Cantrill became involved, Defendant was responsible for overseeing and ensuring that vendor invoices were paid accurately and in a timely fashion.

## VII.  DEFENDANT'S MISMANAGEMENT OF THE PLAINTIFF COMPANIES' FINANCES AND FRAUDULENT ACTIONS IN VIOLATION OF FEDERAL AND STATE LAW

25.

In 2010, SPS promoted Jeremy Cantrill to Vice President of Operations.  Mr. Cantrill is the highest-level field operations manager.

26.

In or about 2012, Mr. Cantrill began receiving numerous complaints from vendors and creditors regarding late or incomplete payments by the Plaintiff Companies for services rendered.  Mr. Cantrill reported these complaints to Mr. Dickey, the President of SPS.

27.

Mistakenly believing that Defendant was simply falling behind in her responsibilities, Mr. Dickey asked Mr. Cantrill to work with Defendant on the late vendor payments.

28.

Working with Defendant to obtain the identity of the creditors/vendors, Mr. Cantrill prepared a spreadsheet of all vendors and creditors to which payments were due based on priority-of-payment order and gave it to Defendant.  Defendant and Mr. Cantrill understood that payroll was the first payment to be made each

week, before any vendor or creditor.  The spreadsheet had a line item for "payroll" that included taxes, which were represented by Defendant to be paid each week. Prior to June 21, 2013, Defendant did not advise Mr. Cantrill that the IRS or state taxing authorities were creditors, that federal or state payroll taxes were owed, that certain federal or state forms remained unfiled, or that previously filed federal or state tax forms were incomplete or inaccurate.  Mr. Cantrill met with Defendant on a weekly or bi-weekly basis to obtain Defendant's assurances that she made the payments on the spreadsheet.

29.

Defendant regularly met with Mr. Dickey to present financial reports regarding the Plaintiff Companies' financial well-being.  At no time prior to June 21, 2013, did Defendant tell Mr. Dickey that federal or state payroll taxes were owed; instead, on multiple occasions, Defendant knowingly and falsely represented that payroll and payroll taxes were paid.

30.

On June 21, 2013, Plaintiff Brack Maggard learned from Jim Shirley of HLB Gross Collins, the outside accountant for the Plaintiff Companies, that the IRS had filed a Notice of Federal Tax Lien against SPS for its failure to remit over $1,000,000 in federal payroll taxes.

31.

On June 21, 2013, Plaintiff Maggard advised Mr. Dickey about the filing of the Notice of Federal Tax Lien.  Mr. Dickey confronted Defendant, who admitted that she failed to properly remit payment of the Plaintiff Companies' payroll taxes to the federal and state tax authorities.

32.

When confronted about her failure to pay the payroll taxes, Defendant stated, "I made a bad decision."

33.

On June 24, 2013, Defendant met with Plaintiff Maggard, Mr. Dickey, Mr. Cantrill and Wade Purcell, General Counsel, at which time Defendant falsely represented that 2012 taxes were paid but that the Plaintiff Companies were delinquent on 2013 taxes in the amount of $420,000 due to paying-off 2012 taxes. On June 26, 2013, in a meeting with accountant Jim Shirley, Plaintiff Maggard and Mr. Dickey at Mr. Shirley's office, Defendant falsely represented to them that 2013 taxes were paid and she did not advise them that there were any unpaid federal or state payroll taxes for any entity other than SPS.

34.

Specifically, for periods of 2011, 2012, and 2013, the payroll records and employee paychecks falsely reflected that payroll taxes were being withheld and paid to the federal and state governments in accordance with the law.  For parts of these three years, Plaintiff delivered the false pay stubs to the employees via electronic means or U.S. mail.

35.

Defendant prepared false Forms W-2 for the Plaintiff Companies' employees reflecting that payroll taxes were being withheld and paid.  These Forms W-2 were also delivered to the employees and/or to the government via electronic means or U.S. mail.

36.

Defendant's mismanagement in intentionally failing to pay the Plaintiff Companies' federal and state payroll taxes has caused the Plaintiffs to incur millions of dollars in penalties, interest and collection fees from federal and state taxing authorities.  These amounts continue to increase.

37.

In 2011, 2012 and 2013, Defendant prepared inaccurate tax returns, filed late returns, failed to remit all required funds to the federal and state taxing authorities,

failed to file tax returns, and fraudulently concealed these actions by providing false and incomplete financial information to the management and Board of Directors of the Plaintiff Companies.  Defendant took these actions of her own accord; Plaintiffs did not instruct Defendant to take these actions.

38.

Prior to June 21, 2013, Defendant intentionally failed to notify Mr. Dickey, Plaintiff Maggard and the other members of SPS's management of the delinquent federal and state payroll taxes.  No one in management at SPS other than Defendant had any knowledge of the employment tax non-compliance until June 21, 2013, when the outside accountant, Mr. Shirley, told Plaintiff Maggard about the Notice of Federal Tax Lien.

39.

In the course of committing this fraud, Defendant actively concealed multiple notices from federal and state taxing authorities regarding the unpaid taxes and the resulting tax liability (sent by U.S. mail).  Defendant never provided these notices to Mr. Dickey, Plaintiff Maggard or any other manager of the Plaintiff Companies.

40.

Defendant also concealed a visit to SPS's corporate office by an IRS Revenue Officer in 2013. Defendant did not tell Mr. Dickey about the visit from the Revenue Officer even though the Revenue Officer requested Mr. Dickey's personal financial information as part of the tax collection process.

41.

Defendant instructed her subordinate employee not to tell the truth to anyone if she were asked whether federal and state taxes had been paid, which included the officers of the Plaintiff Companies and federal or state tax officials.

42.

In 2013, Defendant untimely filed a knowingly false Form 941 to the IRS for the year 2012. When a subordinate employee questioned the false Form 941, Defendant told the subordinate employee that she would intentionally make the Forms W-2 match the Form 941. Specifically, Defendant stated "They will match; I will leave off the Mexicans".

43.

Additionally, Defendant failed to timely deposit Section 401(k) retirement-plan contributions in the accounts of the Plaintiff Companies' employees.

44.

During Defendant's tenure as CFO and Treasurer, the Plaintiff Companies' finances were mismanaged by Defendant resulting in financial losses to the Plaintiff Companies, including rapid and unexplained changes in the revenue and cash on hand for the Plaintiff Companies.

45.

In May 2011, Defendant loaned SPS money, which Defendant then used to pay the Plaintiff Companies' net payroll obligations.

46.

Pursuant to Fed. R. Civ. P 11(b)(3), Plaintiffs allege that after a reasonable opportunity for further investigation and discovery, including the completion of forensics analysis of the accounting records, Plaintiffs, upon information and belief, will be able to state specific facts demonstrating that Defendant misappropriated and unlawfully converted Plaintiffs' finances for Defendant's personal gain.

47.

Defendant's intentional mismanagement of the Plaintiff Companies' finances has resulted in a multi-million dollar loss to the Plaintiff Companies as a

result of penalties, interest and collection fees imposed by federal and state tax authorities.

## VIII.   COUNT I – RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("FEDERAL CIVIL RICO")

48.

Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1-47 above, as if the same were fully set forth herein.

49.

This is a Federal Civil RICO action brought by Plaintiffs pursuant to 18 U.S.C. §§1961, 1964.  Defendant's actions constitute a violation of 18 U.S.C. § 1962(b) and (c).

50.

Plaintiffs are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

51.

Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b) and (c).

52.

Defendant's manipulation of the Plaintiff Companies and her intentional and calculated actions to fail to timely and fully pay federal and state payroll taxes, conceal her failure to timely and fully pay federal and state payroll taxes (by not producing IRS notices to any officer including the President and telling a subordinate employee not to be truthful about the withheld tax payments), as well as her failure to correctly report the Plaintiff Companies' finances in her capacity as CFO and Treasurer, constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (b) and (c).

53.

Through a pattern of racketeering activities, Defendant maintained control of the enterprise, which was engaged in or, the activities of which, affect interstate commerce within the meaning of 18 U.S.C. §§ 1961(5) and 1962(b).

54.

Defendant's acts and conduct described above constitute racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and (5) because, through said conduct, Defendant committed a series of two or more predicate acts of racketeering within 10 years, including multiple instances of:

(a) **Mail Fraud** in violation of 18 U.S.C. § 1341 by intentionally using private couriers and interstate mail to fraudulently cover-up her mismanagement and misappropriation of the Plaintiff Companies' funds by transmitting financial misrepresentations continually between 2011 and 2013;

(b) **Wire Fraud** in violation of 18 U.S.C. § 1343 by intentionally using electronic means through interstate commerce to fraudulently cover-up her mismanagement and misappropriation of the Plaintiff Companies' funds by transmitting financial misrepresentations continually between 2011 and 2013; and

(c) **Obstruction of Justice** in violation of 18 U.S.C. § 1503 by directing a subordinate employee of the Plaintiff Companies to make misrepresentations regarding the delinquent or incomplete payment of the federal and state payroll taxes to "anyone" who asks, including company officers and federal or state tax officials.

55.

Defendant's racketeering activity described above constitutes a "pattern" within the meaning of 18 U.S.C. § 1961(5) for reasons including that Defendant committed a minimum of two acts of wire and mail fraud, 18 U.S.C. §§ 1341 and

1343 respectively, and obstruction of justice, 18 U.S.C. § 1503, in furtherance of Defendant's intentional failure to pay the Plaintiff Companies' payroll taxes.

56.

Defendant's racketeering activities as alleged in this Complaint relate to an enterprise that affected interstate commerce, foreign commerce, or both, within the meaning of 18 U.S.C. § 1962(c).

57.

Defendant's acts and conduct are unlawful and violate 18 U.S.C. § 1962(c) for reasons including that Defendant has conducted or participated directly or indirectly in the conduct of the affairs of an enterprise through a pattern of racketeering activity, as set forth above.

58.

As a direct and proximate result of Defendant's conduct constituting violations of 18 U.S.C. § 1962(b) and (c), Plaintiffs have been injured in their business or property, have suffered actual damages, and are continuing to suffer additional damages in an amount to be proved at trial.

59.

Under 18 U.S.C. § 1962(c), Plaintiffs are entitled to treble damages.

60.

Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover attorneys' fees and other costs incurred in bringing this action in an amount to be established at trial.

61.

**Wherefore**, Plaintiffs pray:

(a)     That Plaintiffs recover judgment against Defendant for actual compensatory damages in an amount to be proved at trial;

(b)     That Plaintiffs recover treble damages pursuant to 18 U.S.C. § 1964(c);

(c)     That Plaintiffs recover judgment against Defendant for reasonable attorneys' fees and costs of litigation in an amount to be specified by amendment;

(d)     That all costs of this action be taxed against Defendant; and

(e)     That Plaintiffs recover any further relief as is just and proper.

## IX.    COUNT II – RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("GEORGIA CIVIL RICO")

62.

Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1-61 above, as if the same were fully set forth herein.

63.

This is a Georgia Civil RICO action brought by Plaintiffs pursuant to O.C.G.A. § 16-14-1 *et seq.*

64.

Plaintiffs are "persons" within the meaning of O.C.G.A. § 16-14-3 and 16-14-6(c).

65.

Defendant is a "person" within the meaning of O.C.G.A. §§ 16-14-3 (6).

66.

Defendant's manipulation of the Plaintiff Companies and her intentional actions to fail to timely and fully pay federal and state payroll taxes, conceal her failure to timely and fully pay federal and state payroll taxes (by not producing IRS notices to any officer including the President and telling a subordinate employee not to be truthful about the withheld tax payments), as well as her failure to correctly report the Plaintiff Companies' finances in her capacity as CFO and

Treasurer constitute an "enterprise" within the meaning of O.C.G.A. §§ 16-14-3(6) and 16-14-4(a) and (b).

67.

Defendant's actions constitute a violation of O.C.G.A. §§ 16-14-4(a) and (b) which, among other things, make it unlawful for Defendant to participate in an enterprise through a pattern of racketeering activity and to acquire money through her employment or otherwise by participating in a continuous and related pattern of racketeering activity.

68.

In violation of O.C.G.A.  § 16-4-4, Defendant has engaged in, or knowingly participated in a continuous and related pattern of racketeering activity, as defined by O.C.G.A. §§ 16-14-3(8) and (9), by engaging in a series of two or more related predicate acts of racketeering, which furthered one or more incidents, schemes or transactions with the same or similar intent, result, victims or methods of commission or that are otherwise interrelated, with the last such act occurring within four years of the previous racketeering act (the "Georgia Predicate Acts").

69.

The Georgia Predicate Acts include, but are not limited to, multiple instances of:

(a)   **Mail Fraud** as defined in 18 U.S.C § 1341 by intentionally using interstate and U.S. mail to fraudulently cover-up her mismanagement and misappropriation of the Plaintiff Companies' funds by transmitting financial misrepresentations continually between 2011 and 2013;

(b)   **Wire Fraud** as defined in 18 U.S.C. § 1343 by intentionally using electronic means to fraudulently cover-up her mismanagement and misappropriation of the Plaintiff Companies' funds by transmitting financial misrepresentations continually between 2011 and 2013;

(c)   **Intimidation or Coercion** in violation of O.C.G.A. § 16-14-3(9)(A) of another person (subordinate employee concerned about her employment status) to commit fraud by misrepresenting the financial status of the Plaintiff Companies to "anyone" who asks, including company officers or federal or state tax officials;

(d)   **Influencing of Witnesses** in violation of O.C.G.A. § 16-10-93 by asking a subordinate employee to commit fraud by telling the

subordinate employee not to tell the truth and to misrepresent the financial status of the Plaintiff Companies to "anyone" who asks, including company officers or federal or state tax officials; and

(e)     Violations of federal law as detailed in the Complaint.

70.

Plaintiffs have been injured as a direct result of Defendant's violations of O.C.G.A § 16-14-4(a) and (c). Plaintiffs have suffered actual damages and are continuing to suffer additional damages in an amount to be proved at trial.

71.

Under O.C.G.A § 16-14-6(c), Plaintiffs are entitled to trebling of any actual monetary damages.

72.

Under O.C.G.A. § 16-14-6(a), Plaintiffs are entitled to recover attorneys' fees and other costs of investigation and litigation in an amount to be specified by amendment.

73.

The acts and conduct by Defendant as set forth above constitute willful misconduct and fraud, and were done with an entire want of care such as to raise the presumption of conscious indifference to consequences.    Accordingly,

Plaintiffs are entitled to recover punitive damages pursuant to O.C.G.A. § 16-14-6(1).  Plaintiffs allege that the acts and conduct of the Defendant were done with specific intent to cause harm, such that the punitive damages Plaintiffs are entitled to recover are not subject to any statutory limit.  Plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

74.

**Wherefore**, Plaintiffs pray:

(a)     That Plaintiffs recover judgment against Defendant for actual compensatory damages in an amount to be proved at trial;

(b)     That Plaintiffs' damages be trebled pursuant to O.C.G.A § 16-14-6 (c);

(c)     That Plaintiffs recover judgment against Defendant for reasonable attorneys' fees and costs of litigation in an amount to be specified by amendment;

(d)     That all costs of this action be taxed against Defendant; and

(e)     That Plaintiffs recover any further relief as is just and proper.

## X.   COUNT III - BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

75.

Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1-74 above, as if the same were set forth fully herein.

76.

As CFO and Treasurer, Defendant owed Plaintiffs a fiduciary duty and duty of loyalty.

77.

As an officer of a corporation with discretionary authority, Defendant was required to carry out her duties in a manner that she believed, in good faith, to be in the best interests of the Plaintiff Companies, their stakeholders and their employees.

78.

Defendant's gross mismanagement of Plaintiffs' finances, including the willful decision to commit tax evasion and fraud by failing to pay Plaintiffs' payroll taxes despite showing such taxes as being paid, constitutes a breach of the fiduciary duties and duty of loyalty that Defendant owed to Plaintiffs arising out of her position as CFO and Treasurer.

79.

Defendant's wrongful concealment of her failure to pay federal and state payroll taxes and other financial mismanagement, including her intentional misrepresentations on Forms 941, Forms 940, Forms W-2, and others constitutes a violation of the duty of candor that Defendant owed to Plaintiffs arising out of her position as CFO and Treasurer.

80.

As a result of Defendant's breach of her fiduciary duties, Defendant has caused Plaintiffs to suffer compensatory damages in an amount to be proven at trial.

81.

The acts and conduct of Defendant were done in an intentional and callous disregard to Plaintiffs' rights and obligations.  Plaintiffs are, therefore, entitled to punitive damages, in an amount to be awarded at trial.

82.

**Wherefore**, Plaintiffs pray:

(a)    That Plaintiffs recover judgment against Defendant for actual compensatory damages in an amount to be proved at trial;

(b)     That Plaintiffs recover punitive damages in an amount to be proved at
        trial;

(c)     That Plaintiffs recover judgment against Defendant for reasonable
        attorneys' fees and costs of litigation in an amount to be specified by
        amendment;

(d)     That all costs of this action be taxed against Defendant; and

(e)     That Plaintiffs recover any further relief as is just and proper.

## XI.    COUNT IV - FRAUD

83.

Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1-82
above as if the same were set forth fully herein.

84.

In 2011, 2012, and 2013, Defendant made false representations to Plaintiffs
regarding the payment of the Plaintiff Companies' federal and state payroll taxes
and financial well-being.

85.

Defendant made false representations to Plaintiffs regarding the payment of
the Plaintiff Companies' federal and state payroll taxes and financial well-being
with express knowledge of the falsity of the representations.

86.

Upon information and belief, Defendant made the false representations with the intent to deceive Plaintiffs regarding the true nature of the financial condition of the Plaintiff Companies and their tax liability in order to, among other things, retain her officer position with the Plaintiff Companies, along with the attendant salary and bonuses.

87.

Plaintiffs reasonably relied upon Defendant's false representations to their detriment given her position of trust and authority with the Plaintiff Companies.

88.

As a result of Defendant's fraudulent actions, Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

89.

Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.   Accordingly, Plaintiffs are entitled to recover punitive damages.

90.

**Wherefore**, Plaintiffs pray:

(a)     That Plaintiffs recover judgment against Defendant for actual compensatory damages in an amount to be proved at trial;

(b)     That Plaintiffs recover punitive damages in an amount to be proved at trial;

(c)     That Plaintiffs recover judgment against Defendant for reasonable attorneys' fees and costs of litigation in an amount to be specified by amendment;

(d)     That all costs of this action be taxed against Defendant; and

(e)     That Plaintiffs recover any further relief as is just and proper.

91.

Plaintiffs hereby demand a trial by jury on all claims for which a trial by jury is available under federal and Georgia state law.

Respectfully submitted this 26th day of September, 2013.

**CHAMBERLAIN HRDLICKA**
  **WHITE WILLIAMS & AUGHTRY**


By:   */s/ Annette A. Idalski*
Annette A. Idalski
Georgia Bar No. 005559
M. Travis Foust
Georgia Bar No. 104996
191 Peachtree Street, N.E., 34th floor
Atlanta, GA  30303-1747
Telephone:  (404) 658-5386
Facsimile:   (404) 658-5387

***Counsel for Plaintiffs***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **SOUTHERN PAN SERVICES** | ) | |
| **COMPANY, THE SOUTHERN PAN** | ) | |
| **– ARTIS GROUP SERVICES JOINT** | ) | |
| **VENTURE , THE ARTIS GROUP** | ) | |
| **SERVICES, LLC, TEXAS** | ) | |
| **FORMWORK, LLC, HYBRID** | ) | |
| **CONCRETE STRUCTURES, LLC,** | ) | |
| **SOUTHERN PAN SERVICES CO.** | ) | **CIVIL ACTION NO:** |
| **EMPLOYEE STOCK OWNERSHIP** | ) | |
| **TRUST and BRACK MAGGARD,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **CARRIE N. HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF COMPLIANCE

This is to certify that the undersigned has complied with the requirements in LR 5.1 NDGA regarding type limitations in the filing of the above Complaint, and that the Complaint has been prepared with one of the font and point selections approved by the Court in LR 5.1(C)(3), NDGA.

1872937_4

**CHAMBERLAIN HRDLICKA**
**WHITE WILLIAMS & AUGHTRY**


By:___*/s/ Annette A. Idalski*_____
       Annette A. Idalski
       Georgia Bar No. 005559